# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| VERONICA LISA DAVIS, | Case No. 1:17-cv-00621-SAB |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 15, 16, 17) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Veronica Davis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lumbar degenerative disc disease; cervical degenerative joint disease; morbid obesity; posttraumatic stress disorder ("PTSD"); and depression. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on May 5, 2011, alleging disability beginning September 22, 2009. (AR 348-357.) Plaintiff's application was initially denied on October 24, 2011, and denied upon reconsideration on April 17, 2012. (AR 165-170, 175-180.)

Plaintiff requested and received a hearing before Administrative Law Judge Serena S. Hong ("ALJ Hong"). Plaintiff appeared for a hearing on August 28, 2013. (AR 74-108.) On November 8, 2013, ALJ Hong found that Plaintiff was not disabled. (AR 136-150.) On June 5, 2015, the Appeals Council granted the request for review and vacated the hearing decision and remanded the case to an Administrative Law Judge for resolution of certain issues. (AR 158-161.)

Plaintiff then appeared for a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ") on November 17, 2015. (AR 40-73.) On December 16, 2015, the ALJ found that Plaintiff was not disabled. (AR 15-31.) The Appeals Council denied Plaintiff's request for review on March 1, 2017. (AR 1-4.)

### A. Relevant Hearing Testimony

Plaintiff testified that she has anxiety and depression.[2] (AR 58.) When she is watching TV or is on the computer, she has issues paying attention to what she is doing. (AR 59.) She completed the eighth grade and has not earned her GED. (AR 45, 79.) She took special education classes in junior high and elementary school for some of her classes. (AR 79-80.) She was in special education for home room in the second and third grades. (AR 80.) She does not have any problems reading and writing. (AR 80.) She tried to get her CNA license and her GED, but she did not complete the classes due to concentration issues. (AR 80-81.) In 2008 and 2009, she was providing care to people in their homes. (AR 48.) She helped people with their hygiene, washed clothes, gave medication, and took people to appointments. (AR 49.)

---

[2] The Court only discusses the testimony that is relevant to Plaintiff's challenge to the ALJ's step five findings.

Cheryl Chandler, a vocational expert ("VE"), also testified at the hearing. (AR 67-72.) The ALJ asked the VE hypotheticals based on an individual of the same age, education, and work background as Plaintiff. (AR 67.) The third hypothetical that the ALJ gave the VE was for light work with lifting 20 lbs. occasionally and 10 lbs. frequently; sitting, standing, or walking 6 to 8 hours; no ladders, ropes, or scaffolds; occasional stooping, crouching, crawling, climbing, kneeling, and balancing; moderate heights; simple, routine tasks; and a sit-stand option every hour. (AR 68-69.)

The VE testified that the individual could perform cashier II, Dictionary of Occupational Titles ("DOT") # 211.462-010. (AR 68-69.) However, the number of cashier jobs would be eroded by 90%, leaving approximately 115,000. (AR 69.) The individual could work as a counter clerk, which is light, SVP 2, and DOT # 249.366-010. (AR 69.) There would be a 90% erosion of the number of jobs, leaving approximately 15,000 nationally. (AR 69.) The individual could also work as an information clerk, which is light, SVP 2, and DOT # 237.367-018. (AR 69.) A 90% erosion of the number of jobs would leave approximately 9,000. (AR 69.)

Plaintiff's counsel then asked the VE several hypotheticals. (AR 70-71.) The VE testified that an individual like the one in the ALJ's third hypothetical who also required an assistive device for balance, ambulation, and when changing positions could perform assembly task, which is sedentary, unskilled, SVP 2, and DOT # 734.687-018.[3] (AR 70-71.) The sit-stand option would erode the number of jobs by 50%, leaving 15,000 in the national economy. (AR 71.) The individual could also be an ampoule sealer, which is sedentary, unskilled, SVP 2, and DOT # 559.687-014. (AR 71.) There would be a 50% erosion of the number of jobs, leaving 12,000. (AR 71.)

The VE testified that her testimony was consistent with the DOT. (AR 72.)

///

---

[3] After the VE identified the ampoule and assembly task jobs, the VE testified that the individual would not be able to perform those jobs using an assistive device while standing. (AR 71.) The VE testified that she assumed that the individual could tolerate standing without an assistive device. (AR 71.)

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since May 5, 2011, the application date.
- Plaintiff has the following severe impairments: lumbar degenerative disc disease; cervical degenerative joint disease; morbid obesity; PTSD; and depression.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 lbs. occasionally and 10 lbs. frequently; sit, stand, and walk 6 to 8 hours in an 8-hour work day; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but she can never climb ladders, ropes, and scaffolds, and she must avoid moderate exposure to heights. In addition, she must have the option to sit/stand every hour as needed. Lastly, she can perform simple, routine tasks.
- Plaintiff has no past relevant work.
- Plaintiff was born on January 28, 1976, and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since May 5, 2011, the date the application was filed.

(AR 18-31.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant

must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a

conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that that the ALJ did not meet her burden at step 5 to show that Plaintiff could perform a significant number of jobs considering Plaintiff's age, education, work experience, and RFC. Defendant counters that the ALJ's decision and the VE's testimony demonstrate that Plaintiff could perform at least 42,000 jobs nationwide.

Between steps three and four, the ALJ assesses the claimant's RFC, which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by her impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four, the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. At step five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 416.920(g).

An ALJ relies on the DOT, which is the Social Security Administration's "primary

1 source of reliable job information" regarding jobs that exist in the national economy, in making
2 this determination. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). Along with the
3 DOT, an ALJ will rely on the testimony of a VE who testifies about specific occupations that a
4 claimant is able to perform based on the RFC. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d
5 685, 689 (9th Cir. 2009); 20 C.F.R. § 416.966(e). In concluding the step five analysis, the ALJ
6 determines "whether, given the claimant's RFC, age, education, and work experience, he
7 actually can find some work in the national economy." Valentine, 574 F.3d at 689; see also 20
8 C.F.R. § 416.920(g).

Plaintiff's asserts that the jobs that the ALJ found Plaintiff could perform have reasoning levels that are beyond the reasoning level in the RFC. "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of the worker for satisfactory job performance.' " Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (quoting DOT, "Appendix C—Components of the Definition Trailer," 1991 WL 688702 (4th ed. 1991)). There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). Id. The DOT states that the reasoning for Levels Two and Three are:

- **Level Two:** Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

- **Level Three:** Apply commensurate understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Zavalin, 778 F.3d at 847 (quoting DOT, App. C, 1991 WL 688702).

The Ninth Circuit has held that a limitation to simple, repetitive tasks is consistent with Level 2 reasoning. See Zavalin, 778 F.3d at 847. Therefore, there is an apparent conflict between an RFC of simple, repetitive tasks and jobs with higher than level 2 reasoning. Id. The ALJ is required to reconcile any apparent conflicts between the VE's testimony and the DOT. Id. at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153-1154 (9th Cir. 2007)). "The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." Zavalin,

778 F.3d at 846 (citing Massachi, 486 F.3d at 1154).

Here, Plaintiff's RFC includes a limitation to simple, routine tasks. (AR 23.) Therefore, a finding that Plaintiff could perform a job that is above Level 2 reasoning would be an apparent conflict with Plaintiff's RFC. See Zavalin, 778 F.3d at 847. An apparent conflict exists as a matter of law between the ALJ's finding that Plaintiff is limited to simple, routine tasks and the VE's testimony that a person with Plaintiff's RFC could perform the cashier II (Level 3 reasoning) and information clerk (Level 4 reasoning) jobs. See DOT # 211.462-010, 1991 WL 671840; DOT # 237.367-018, 1991 WL 672187. The ALJ erred by not providing a reasonable explanation for this apparent conflict.

The Court next addresses whether the ALJ's error is harmless. The harmless error inquiry is "whether the ALJ's decision remains legally valid, despite such error." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). In order to find an error harmless, the Court must be able to confidently conclude that no reasonable ALJ, when fully crediting the opinion, could have reached a different disability determination. See Stout, 454 F.3d at 1056. A district court may only apply harmless error in a way that affirms the agency on a ground invoked by the ALJ. Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (citing Stout, 454 F.3d at 1054).

Defendant states several reasons why the error is harmless. Defendant argues that any error is harmless because Plaintiff could perform the counter clerk and cashier jobs that the ALJ found Plaintiff could perform at step five. Defendant also argues that Plaintiff could perform jobs that the VE identified, but the ALJ did not include in her decision.

The Court will first address Defendant's argument that any error is harmless because the ALJ found that Plaintiff could perform another job besides the cashier and information clerk jobs. Relying on the VE's testimony, the ALJ found that Plaintiff could perform the job of counter clerk. (AR 31, 69.) Counter clerk is a Level 2 reasoning job. See DOT # 249.366-010, 1991 WL 672323. The error in this case is harmless if this other occupation identified by the ALJ exists in significant numbers either regionally or nationally. See De Rivera v. Berryhill, 710 F.App'x 768, 769 (9th Cir. 2018) (unpublished) (citing Gutierrez v. Comm'r of Soc. Sec.

Admin., 740 F.3d 519, 523-524 (9th Cir. 2014); 42 U.S.C. § 1382c(a)(3)(B)).[4]

Plaintiff asserts that the number of jobs nationally for counter clerk is not significant. Work exists in "significant numbers" if it exists in "significant numbers" either in the region where the individual lives or in several regions throughout the country. 42 U.S.C. § 423(d)(2)(A); Gutierrez, 740 F.3d at 528. However, the Ninth Circuit has not created a bright-line rule for what constitutes a "significant number" of jobs. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). In Beltran, 135 regional jobs and 1,680 national jobs was not a "significant number." Id. In Gutierrez, the Ninth Circuit stated that whether "25,000 national jobs is sufficient presents a close call." Gutierrez, 740 F.3d at 529. However, the court ultimately concluded that 25,000 jobs nationally "represents a significant number of jobs in several regions of the country." Id. In making this finding, the Ninth Circuit noted that "25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.' " Id.

The Ninth Circuit recently held in an unpublished case that it is not clear that 5,000 jobs nationally and 500 jobs in California are significant. See De Rivera, 710 F.App'x at 769. Therefore, in that case, the Ninth Circuit could not "confidently conclude" that the ALJ's error was harmless. Id. (citing Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted)). The Ninth Circuit has also found that 10,000 jobs nationally "may not amount to a significant number of jobs," and therefore, the record did not show in that case that the ALJ's error was inconsequential to the ultimate nondisability determination. See Randazzo v. Berryhill, — Fed.Appx. —, 2017 WL 6374297, *2 (9th Cir. 2017) (unpublished); see also Buckins v. Berryhill, 706 F.App'x 380, 381 (9th Cir. 2017) (unpublished) (finding that 5,104 jobs nationally does not constitute a significant number, but 25,904 jobs nationally is a significant number).

Here, the Court must determine whether 15,000 jobs nationally in this case is a significant number. A finding of 15,000 counter clerk jobs likely does not fall into the category

---

[4] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

9

of isolated jobs existing in very limited numbers. See 20 C.F.R. § 416.966(b) ("[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in the national economy.") Therefore, the Court finds that 15,000 jobs nationally in this case for the counter clerk job is a significant number. As the remaining occupation that the ALJ found Plaintiff could perform—counter clerk—exists in significant numbers nationally, the Court finds that the ALJ's error in failing to resolve the apparent conflict between Plaintiff's RFC and the cashier and information clerk jobs is harmless.[5] See De Rivera, 710 F.App'x at 769 (citing Gutierrez, 740 F.3d at 523-524).

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's error in failing to resolve the apparent conflict between Plaintiff's RFC and the cashier and information clerk jobs is harmless.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Veronica Lisa Davis. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **April 12, 2018**

UNITED STATES MAGISTRATE JUDGE

---

[5] As the Court finds that the error is harmless because 15,000 counter clerk jobs nationally is a significant number, the Court does not address Defendant's other arguments for why the ALJ's error is harmless.

10